[No. 7547]

FOSTER v. THE PEOPLE.

1. CRIMINAL LAW—*Instructions—Reasonable Doubt*—Prosecution for larceny. The jury were properly instructed as to the presumption of innocence, and as to the measure of proof required to overcome it; and that a reasonable doubt is one "naturally arising from a fair and impartial consideration of all the evidence." In another part of the charge they were told that they were not to "resort to trivial or fanciful suppositions or theories, or remote conjectures of possible states of fact differing from that established by the evidence," nor "to disbelieve as jurors if you believe as men." *Held,* that the charge must be considered as a whole, and that thus construed the jury could not have been misled by the clause last quoted. But this clause disapproved, and attention again called to the instruction given in *Minich v. People,* 8 Colo. 454.

2. ——*Alibi*—The defense being an alibi the jury were told that if they entertained a reasonable doubt upon this question they should acquit. Then followed a passage by which they were told that to entitle this de-

fense to consideration, it "must be such as to show that at the very time of the commission of the crime the accused was at another place," and the proof "must cover the whole time of the transaction, so as to render it impossible" that the defendant could have committed it. The contention that by the words quoted a reasonable doubt as to the alibi was excluded, was overruled.—*Wisdom v. People*, 11 Colo. 170, distinguished. Hill, J., dissented.

3. ——*Recent Possession of Stolen Goods*—An instruction to the effect that one found in possession of property recently stolen is called upon to explain such possession, is not improper, even where the accused offers evidence of previous good character and an alibi.

4. ——*Credit to be Accorded to Accused Testifying in His Own Behalf—Instruction*—The accused having given testimony in his own behalf, the jury were told that, in determining the credit to be accorded to him, they might consider his demeanor upon the stand, and his interest in the result of the prosecution. It was contended that to thus single out the accused, and direct attention to his interest in the result, was error; but this contention was overruled, in view of the fact that no suggestion was given as to the weight to be accorded to the prisoner's testimony, and no intimation that his credibility should be tested by a different standard than that applied to other witnesses (Rev. Stat., sec. 1984).

5. NEW TRIAL—*Misconduct of Counsel*—Improper remarks of counsel in his address to the jury will not be considered, on error brought, unless objected to at the time, with a request to the court to instruct the jury to disregard them; nor unless such request is refused.

6. PRACTICE IN SUPREME COURT—*Verdict Upon Conflicting Evidence*, will not be disturbed where there is in the record substantial testimony sufficient to support it. The credibility of the witnesses is exclusively for the jury, and will not be retried in the court of review.

*Error to Jefferson District Court.*—Hon. CHARLES McCALL, Judge.

Mr. GEO. B. CAMPBELL, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. FRANK C. WEST and Mr. NORTON MONTGOMERY, for the People.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error, whom we shall hereafter refer to as defendant, was convicted of the larceny of a team of

horses, wagon, harness, and other personal property, and sentenced to a term in the penitentiary. On his behalf it is urged,—first, that the testimony is insufficient to sustain his conviction, and, second, that erroneous instructions were given.

The testimony on behalf of the people was that during the night of August 18th the property described in the information was stolen from the ranch of the owner in the vicinity of Golden; that the following day about 11 A. M. this property was left by defendant at a livery stable in Watkins, twenty odd miles east of Denver, and that the next day he told one Rutherford where the property could be found. Rutherford also testified that a roll of bedding found in the wagon at Watkins was the property of defendant, and that he had delivered it to him at his home in Denver a few weeks prior to the date the larceny was committed. The keeper of the stable at Watkins and his brother identified the defendant as the person who had left the property at Watkins, but it was brought out at the trial that the livery man, at the preliminary examination, was unable to identify the defendant as the person who had left the property with him. Neither of these witnesses was able to describe the clothing worn by defendant at the time they testified he was at Watkins. The defendant, as a witness in his own behalf, denied taking the property, denied that he was at Watkins on the 19th, denied he told Rutherford where the property could be found, and testified that he was at home in North Denver during the night of the 18th, and all day of the 19th. He also denied that he owned the bedding, or that it had ever been delivered to him by Rutherford. His wife testified that he was home during the night of the 18th, and until 9 or 10 o'clock the morning of the 19th. Two other witnesses testified they saw the defendant at his home in Denver on the evening of the 18th, and on the morning of the 19th from about 8 to

10 o'clock. To support the testimony of these witnesses memoranda was introduced purporting to show that one of them had loaned the defendant $2.00 on August 19th, and defendant's wife also testified that the roll of bedding found in the wagon was not his property, and had never been in his possession.

From this resume it appears there was a sharp conflict in the testimony and that there were circumstances necessary to consider in determining its weight and credibility. It was the special province of the jury in such circumstances to determine the facts. To this end they had to pass upon the credibility of the witnesses and decide who told the truth. If the property was stolen the evening of the 18th, and left the next morning by the defendant about 11 o'clock at Watkins, some thirty odd miles from the place where stolen, the natural inference would be that he was guilty of the larceny charged, while, on the other hand, if he was home the night of the 18th and the morning following until about 9 or 10 o'clock he was not guilty of the theft. So that from the state of the testimony it was for the jury to determine the facts from the conflicting statements of the witnesses. Should we undertake to say that the witnesses who identified the defendant as the person who left the stolen property at Watkins, or the witness who identified the bedding found in the wagon should not be believed, and that the testimony on behalf of defendant that he was at home during that period, which would render it impossible for him to have committed the theft, should be taken as true, we would be usurping the functions of the jury, who had the advantage of hearing the witnesses and noticing their demeanor when testifying,—aids in determining their credibility of which we are deprived by mere review of the record.

If the jury believed the evidence on behalf of the

prosecution, as they evidently did, no rational conclusion could be reached except that the defendant was guilty. This testimony was controverted but the jury were the judges of the credibility of the witnesses, and as there was sufficient substantial testimony to support a finding of facts necessary to declare the defendant guilty their verdict will not be disturbed on review.

A portion of an instruction given is as follows:

"A juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions or theories or remote conjectures of possible states of fact different from that established by the evidence. You are not at liberty to disbelieve as jurors if you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been given."

The objection urged to this part of the instruction is that the jury were thereby relieved from the obligation of their oath and were advised that they were at liberty to find him guilty, based upon their belief as men, regardless of the fact that the testimony might not be sufficient to establish his guilt beyond a reasonable doubt. Preceding the part of the instruction above quoted and as a part thereof the court advised the jury to the effect that a reasonable doubt is a doubt naturally arising from a fair and impartial consideration of all the evidence in the case and that if the jury could say after considering all the evidence that they had an abiding conviction of the truth of the charge they were satisfied beyond a reasonable doubt. Following the instruction objected to, the jury were advised that the law presumed the defendant innocent until the contrary was proven and that this presumption must continue and prevail in the minds of the jury until they were satisfied from the evidence beyond all reasonable doubt of his guilt, and acting on this

presumption they should acquit the defendant unless constrained from the evidence to find him guilty. The court also advised the jury to the effect that the law does not require the defendant to prove himself innocent, but that the law imposed upon the prosecution the obligation to prove him guilty to their satisfaction beyond all reasonable doubt, and unless this has been done the jury should acquit. The jury were further advised that,

"The evidence, to convict the accused, must not merely be beyond all reasonable doubt consistent with the hypothesis of his guilt but it must also be beyond all reasonable doubt inconsistent with any hypothesis of innocence that can be reasonably drawn therefrom."

Instructions must be considered as a whole, and, applying this rule, it is clear that the jury were instructed that they could not find the defendant guilty unless they were convinced from the evidence beyond a reasonable doubt that he was guilty as charged. The jury knew from their oath that they were to render a verdict according to the evidence and the law as given them by the court. They were repeatedly advised that they could not find the defendant guilty unless satisfied from the evidence beyond a reasonable doubt of his guilt as charged, consequently, even if the portion of the instruction objected to standing alone could be said to be objectionable, the jury were not misled, but must have understood that a verdict of guilty could not be rendered except on the testimony and that from this source they must be satisfied beyond a reasonable doubt of the defendant's guilt before they could convict. In sustaining the instruction, however, we do not wish to be understood as commending it. We had occasion to consider it in *McQueary v. People,* 48 Colo. 214, 110 Pac. 210, 21 Ann. Cas. 560, where it was stated that it was useless because it did not convey any information which men of ordinary intelligence did not

already possess, and in that case, and in others referred to therein, we called the attention of district attorneys and trial judges, and now do so again, to the advisability of following an approved instruction on the subject of reasonable doubt, like that given in *Minich v. People,* 8 Colo. 454, 9 Pac. 4, for the reason that this is the safe practice and obviates the necessity of considering instructions on the subject differently worded.

On the question of alibi, the court, after defining that it meant the defendant was at another place at the time the crime charged in the information was committed, stated that such a defense was legitimate and proper; that all the evidence bearing on that question should be carefully considered and if, in view of all the evidence, they entertained a reasonable doubt as to whether the accused was in some other place when the crime was committed they should give him the benefit of this doubt and find him not guilty. The instruction under consideration concluded as follows:

"The defense of an alibi to be entitled to consideration must be such as to show that at the very time of the commission of the crime the accused was at another place so far away and under such circumstances that he could not, with any ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof, and to render the proof of an alibi satisfactory the evidence must cover the whole time of the transaction in question so as to render it impossible that the defendant setting up such defense could have committed the act."

The objection urged to this instruction is that by the paragraph quoted the defendant was prevented from the application of the rule of reasonable doubt which might arise from the testimony bearing upon his plea of alibi. In *Wisdom v. People,* 11 Colo. 170, 17 Pac. 519, an instruc-

tion similar to the part above quoted, beginning with "and to render," was given. It was there held that if the instruction related exclusively to the completeness with which the whole time must be covered by the evidence it was correct, but if it related to the sufficiency of the proof of the alibi then the instruction was erroneous because it required a greater degree of proof than might be sufficient to create a reasonable doubt of the guilt of the accused, and, as it might have been so understood by the jury, it was held error. The instruction in that case, however, is clearly distinguishable from the one under consideration for the reason that in the *Wisdom* case all that preceded the instruction, and as a part thereof, was a definition of the defense known in law as an alibi; while in the case at bar the jury from the instruction as a whole were advised in unmistakable terms that the defense was legitimate; that all the evidence bearing on the question should be carefully considered, and if, upon such consideration, they entertained a reasonable doubt as to whether the defendant was in another place when the crime was committed, he should be given the benefit of such doubt; thus clearly informing them that if the testimony on the subject of the alibi raised a reasonable doubt in their minds regarding his guilt they must find him not guilty.

The court instructed the jury concerning the possession of property recently stolen, and it is contended that this instruction was erroneous because it virtually advised the jury that unless the defendant explained the possession of the property his testimony of an alibi should not be considered, and that when the defendant offers testimony to prove an alibi, or good character, an instruction regarding the possession of stolen property should not be given. There is certainly no merit in this contention. So far as advised from the brief of counsel the instruction was eminently fair and correctly stated

the law. The fact that defendant had interposed the defense of an alibi, or introduced testimony to establish his good character, did not preclude the jury from considering any circumstance brought out by the testimony which would tend to establish his guilt. That the instruction did not in any sense tend to deprive the defendant of his plea of an alibi, or of the benefit of the testimony regarding his character, is evident from a portion of the instruction wherein it is said:

"The burden of proof is upon the people to establish the guilt of the defendant beyond a. reasonable doubt, and if there be any testimony, whether introduced in his own behalf or by the prosecution, which has raised in your mind a reasonable doubt as to any essential element in the case, including the element of possession of stolen property, you should acquit the defendant."

The court advised the jury that they were the sole judges of the credibility of witnesses, and that in determining it they should consider their demeanor on the stand, their interest or lack of interest in the trial, and all facts and circumstances shown in connection therewith. This was followed by a further instruction to the effect that the credibility of the defendant as a witness was to be subjected to the same tests that could be legally applied to other witnesses, and that in determining the degree of credibility which should be accorded his testimony they had the right to take into consideration his demeanor and conduct on the stand, and also the fact that he was interested in the result of the prosecution. The objection urged to this instruction is that it was error for the court to single out the defendant and direct that in considering his credibility his interest in the result was proper for them to consider.

The statute, section 1984, Revised Statutes 1908, provides that in all criminal cases the accused, if he so de-

sire, may be sworn as a witness and that "the jury shall give his testimony such weight-as they think it deserves."

It is unquestioned that the interest of a party to an action has necessarily more or less influence with the court or jury upon the question of his credibility. In weighing the testimony of a party so interested and passing upon his credibility the jury have the undoubted right to consider his personal interest in the result of the trial and it is not error for the court to remind them of such interest, provided, as in this instance, he refrains from suggesting the degree of weight to be given it or intimating that his credibility should be tested or measured by any different standard from that which is applicable to the testimony of other witnesses.—*Porter v. People,* 31 Colo. 508, 74 Pac. 879; *Boykin v. People,* 22 Colo. 496, 45 Pac. 419; *Minich v. People,* 8 Colo. 440, 9 Pac. 4; *Mitsunaga v. People,* 54 Colo. 102, 129 Pac. 241.

The defendant, in support of his alibi, introduced memoranda in lead pencil which purported to show that one of the witnesses in his behalf loaned him $2.00 on August 19th and had been repaid about eight months later. It is claimed by defendant, as shown by the affidavit of his counsel, in a motion for a new trial, that the district attorney, in commenting on this testimony in his argument to the jury, stated that the exhibit was manufactured and had been but recently made because the writing was not faded,—when there was no evidence upon that point.

Conceding that the remarks of the district attorney were improper the defendant is not in a position to urge their consideration upon our attention. It does not appear that counsel for defendant objected to them at the time they were being made or requested the court to direct the jury that they were improper and should not be considered. The general rule applicable here, is that al-

leged improper remarks of the district attorney in his argument to the jury will not be considered on review unless objected to at the time they were made and the court requested to instruct the jury to disregard them and has refused to do so.—*Gilstrap v. People,* 30 Colo. 265, 70 Pac. 325; *Rowe v. People,* 26 Colo. 542, 59 Pac. 57; *Torris v. People,* 19 Colo. 438, 36 Pac. 153; 12 Cyc. 585.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. JUSTICE HILL and Mr. JUSTICE SCOTT dissent.

Mr. JUSTICE HILL dissenting:

I cannot agree with the conclusion concerning the *alibi.* The substance of a similar instruction was held bad in the case of *Wisdom v. People,* 11 Colo. 170. The fact that the portion condemned in that case is preceded in this by certain declarations as to when an *alibi* is entitled to consideration, etc., in my opinion, does not relieve it of the objectionable features complained of, and while it is stated in the former case that the language used might be susceptible to two constructions, it is clear to my mind that to the ordinary juror it means that the defendant must establish to the satisfacion of the jury that it was impossible for him to have committed the crime, that is that the language complained of was intended to relate to the sufficiency of the proof of the *alibi,* which it is conceded is not the law and I do not think that the portion preceding that complained of or any other of the instructions, relieves it of this objectionable feature.

Decided February 2, A. D. 1914. Rehearing denied March 2, A. D. 1914.