**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Randall Edward REX,
Defendant-Appellant.**

No. 82CA1198.

Colorado Court of Appeals,
Div. I.

April 19, 1984.

Rehearing Denied May 17, 1984.

Certiorari Denied Sept. 24, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Inman, Erickson & Flynn, H. Christopher Clark, Robert D. Inman, Denver, for defendant-appellant.

TURSI, Judge.

Randall Edward Rex, defendant, appeals his conviction of second degree kidnapping. We reverse.

On September 19, 1977, defendant was charged with attempted murder in the second degree, second degree kidnapping, and sexual assault on a young girl in Loveland on September 6, 1977. The sexual assault charge was dismissed following a preliminary hearing. Defendant's first trial ended in a mistrial in September 1978. A new trial was conducted, and the jury returned a verdict of guilty on both remaining counts. Following a hearing on defendant's motion for new trial, the trial court dismissed the count of attempted murder in the second degree.

Defendant's conviction of second degree kidnapping was reversed by this court in *People v. Rex*, 636 P.2d 1282 (Colo.App. 1981). There, we held that certain statements made by defendant on September 14 and 15, 1977, were involuntary as a matter of law and, therefore, were improperly admitted against him. The cause was remanded for new trial, which resulted in a jury verdict of guilty as to the remaining count of second degree kidnapping. It is this conviction which is at issue here.

Defendant was questioned on September 14 and 15, 1977, about the September 6 kidnapping because he resembled a composite sketch of the assailant as described by the victim. The composite sketch was prepared on the day after the incident following a session in which the victim was hypnotized in order to enhance her recollection of the incident. This questioning by Officer Teeples resulted in the involuntary statements leading to the previous reversal.

On September 16, 1977, defendant was questioned by Officers Teeples and Darda-

no regarding the kidnapping of a young girl in Arvada. Defendant admitted to picking up a young girl and giving her a ride. However, the description of the girl given by defendant matched neither the victim herein nor the victim of the Arvada kidnapping.

Later that day, defendant was taken into custody by an Officer Sand for transportation to the sheriff's department. Upon being advised by Sand that he was under arrest, defendant stated, "[A]ll I did was give a little girl a ride .... I was just trying to be a nice guy."

Defendant moved to suppress the statements made to Sand, on the ground they were tainted. The trial court found that the statements were voluntary and were not the product of the police misconduct of September 14 and 15. In addition, when the testimony was offered at trial, defendant objected to the statements on grounds of lack of relevance, because the little girl referred to was not the victim. The trial court overruled the objection without making a determination of relevancy to the crime charged. The testimony was admitted.

In an effort to rebut the inference of Sand's testimony, defendant sought to adduce testimony from Officer Teeples to establish that the "little girl" referred to by defendant was not the victim. Without making an objection, the People stated that such testimony would "open the door" to examination on the involuntary statements made on September 14 and 15, 1977. Discussion was conducted out of the presence of the jury. The trial court declined to make a ruling until the situation actually arose. However, the trial court stated that defendant ran the danger of opening the door, as the testimony he sought to adduce was intertwined with the involuntary statements. Defendant chose to abandon the questioning rather than risk allowing the involuntary statements into evidence.

Defendant's preliminary motion to suppress testimony of the victim because of her hypnosis for the purpose of enhancing recollection had been denied. At trial, defendant renewed his objection to her testimony on these grounds. The trial court overruled the objection and permitted the victim to testify at trial to the events which took place on September 6, 1977.

The trial court also admitted into evidence testimony that in January 1978, after a physical line-up was conducted, the victim identified defendant as "looking like" her assailant. In addition, the victim was permitted to make an in-court identification of defendant, even though she had failed to identify defendant as her assailant at the two previous trials. The victim testified at trial that she was sure the defendant was her assailant because he was the same man as in the first two trials.

I

Defendant contends that the trial court erred in permitting the victim to testify over his objection to competency based on the victim's previous hypnosis. We agree.

In *People v. Quintanar,* 659 P.2d 710 (Colo.App.1982), we held that testimony of a witness who has been questioned under hypnosis is *per se* inadmissible as to recollections from the time of the hypnotic session forward. However, we held:

"[T]he witness is not incompetent to testify to pre-hypnosis recollections that have previously been unequivocally disclosed and recorded by tape recording, video tape, or ... written statement."

Here, no such procedure was followed. Thus, it is impossible to ascertain whether the victim's testimony and identification of the defendant was based on pre-hypnosis recollection. As such, the victim is incompetent to testify to the events which took place on September 6, 1977, and as to recollections from the time of hypnosis forward. Therefore, it was reversible error to permit the victim to testify at the trial.

Since this matter must be remanded for retrial, we address defendant's other allegations of error which may arise at that time.

## II

Defendant argues that the trial court should have ruled that adducing testimony regarding the description he gave to Teeples and Dardano on September 16, 1977, would not "open the door" to the admission of the involuntary statements defendant made on September 14 and 15.

■ The use of an involuntary statement, for any purpose, against a defendant in a criminal trial constitutes a denial of due process. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). *See People v. Salazar,* 44 Colo.App. 242, 610 P.2d 1354 (1980). Here, the voluntariness of the statements made to Teeples and Dardano on September 16, 1977, is not in dispute as they were offered into evidence by defendant. Thus, if relevant, these statements may properly be admitted into evidence, even though they are related to the statements previously determined involuntary. Therefore, on retrial, testimony regarding defendant's statements to Teeples and Dardano on September 16, 1977, may be admitted if the trial court determines them relevant, and not unfairly prejudicial. *See* CRE 401 and 403. The involuntary statements made by defendant on September 14 and 15 may not be admitted for impeachment purposes.

## III

Defendant contends that the trial court erred in using the term "confessions" in its instruction regarding the voluntariness of defendant's extra-judicial statements to Sand. We agree.

■ The trial court's instruction is a verbatim rendition of *Colo.J.I.Crim.* 4:5. However, Sand's testimony consisted of statements made by defendant, not confessions of guilt to the crime charged. Therefore, if the evidence is admitted on retrial, the term "confessions" should be deleted from the instruction, and the term "statements" should be used. *See Colo.J.I.Crim.* 4:04 (model instruction now uses only the term "statements").

## IV

Defendant contends that the trial court's instructions to the jury misplaced the burden of proving alibi and confused the jury. We agree that the instructions as given create a probability of confusion which may well have been prejudicial to defendant.

■ The trial court found, defendant presented credible evidence tending to establish alibi as an affirmative defense. Section 18–1–407(1), C.R.S. (1978 Repl. Vol. 8). Therefore, it became incumbent upon the trial court to instruct the jury that the burden is on the People to refute defendant's affirmative defense beyond a reasonable doubt. Section 18–1–407(2), C.R.S. (1978 Repl. Vol. 8). *See People v. Villa,* 43 Colo.App. 284, 605 P.2d 481 (1979).

The trial court's instruction number sixteen states:

"Evidence has been introduced tending to establish an alibi, which amounts to a contention that the Defendant was not present at the time when, or at the place where he is alleged to have committed the offense charged in the Information. "If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the Defendant was present at the time and place the alleged offense was committed, you must acquit him."

The trial court deleted the following language from *Colo.J.I.Crim.* 7:1:

"The prosecution, therefore, has the burden of proving to your satisfaction beyond a reasonable doubt the guilt of the defendant as to that issue as well as to all of the elements of the crime charged."

Upon retrial, the trial court should follow *Colo.J.I.Crim.* 7:01 (1983).

The trial court's instruction number seventeen states:

"The defense of an alibi, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime the accused was at another place so far away and under such circumstances that he could not, with any ordi-

nary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof; *and, to render the proof of an alibi satisfactory, the evidence must cover the whole time of the transaction in question, so as to render it impossible that the defendant setting up such defense could have committed the act."* (emphasis added)

Defendant contends that the emphasized portion of this latter instruction tends to create confusion. We agree.

That portion of the instruction has been approved by our supreme court in *Foster v. People,* 56 Colo. 452, 139 P. 10 (1914). However, the language "so as to render it impossible that the defendant setting up such defense could have committed the act" does tend to create confusion and is in apparent conflict with the legislative intent contained in § 18–1–407, C.R.S.; (1978 Repl. Vol. 8) relating to affirmative defenses. *See Wisdom v. People,* 11 Colo. 170, 17 P. 519 (1887) and *Foster v. People, supra* (Hill, J., dissenting). *See also Barr v. People,* 30 Colo. 522, 71 P. 392 (1903) and *People v. Villa, supra.* Therefore, it should not be used upon retrial.

We have considered defendant's remaining contentions and find them to be without merit or unlikely to occur on retrial.

The judgment of the trial court is reversed, and the cause is remanded for new trial to be held in accordance with this opinion.

PIERCE and BABCOCK, JJ., concur.