**The PEOPLE of the State of Colorado, Petitioner,**

v.

**John Francis HUCKLEBERRY, Respondent.**

**No. 87SC49.**

Supreme Court of Colorado, En Banc.

Feb. 21, 1989.

Rehearing Denied March 13, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Peter J. Stapp, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender and Barbara S. Blackman, Chief Appellate Deputy Public Defender, Denver, for respondent.

KIRSHBAUM, Justice.

The petitioner, John Francis Huckleberry (Huckleberry), was convicted in El Paso County District Court of first degree murder, in violation of section 18–3–102, 8B C.R.S. (1986), and a crime of violence, in violation of section 16–11–309, 8A C.R.S. (1986). The Court of Appeals reversed the conviction in *People v. Huckleberry*, 738 P.2d 17 (Colo.App.1986), holding that the trial court committed reversible error by failing to give a jury instruction on the affirmative defense of alibi and by admitting hearsay statements of the victim. Having granted certiorari to review the decision of the Court of Appeals, we reverse and remand with directions.

I

On November 29, 1983, at approximately 12:36 a.m., Officer Wilkinson of the Colorado Springs Police Department was dispatched to the 7400 block of Lexington Avenue in Colorado Springs. Upon arriving, he observed a blue Toyota station wagon parked along the edge of the street, partially lifted by a jack and missing the left front tire. Wilkinson also discovered the body of Beverly Huckleberry (Beverly) lying in a tire track in a nearby snow-covered field. She had died as the result of massive skull injuries.

Police investigators later matched the tire tread marks in the field to those of a Ford pickup owned by the Osborn Toyota dealership where Huckleberry worked. On December 29, 1983, Huckleberry was charged with first degree murder after deliberation and a crime of violence in connection with the death of his wife.

A jury trial commenced on July 30, 1984. The People argued that Huckleberry incapacitated his wife, placed her in the field, and then deliberately drove the truck over her.

During the trial, Suzanne Somma (Somma), a friend of the Huckleberrys, testified regarding a conversation she had with Huckleberry on November 29, 1983—the day Beverly's body was discovered. She testified that she told Huckleberry that she had met with Beverly on the evening of November 28 and that during the meeting Beverly stated that Huckleberry had given Beverly a truck from his dealership to drive when he discovered that Beverly's car had a flat tire. Somma also testified that Huckleberry responded to her comments by disputing that Beverly drove a truck the prior evening, requesting Somma to say that Beverly was actually driving the truck on November 27 rather than November 28, and warning Somma not to tell police officials about the truck or they would "hang him for sure."

Defense counsel objected to these portions of Somma's testimony describing her conversation with the victim, arguing that any statements made by Beverly to Somma were inadmissible hearsay. The trial court

overruled the objections and instructed the jury that the statements were admitted only "for the purpose of enabling [the jurors] to understand the nature of the conversation and response between [Somma] and [Huckleberry]," and were not to be considered for the truth of their content. The judge subsequently denied defense counsel's motion for a mistrial based on the admission of this testimony.

At the close of the trial, the jury was instructed as to the elements of the offenses with which Huckleberry had been charged and that the People had the burden of proving each of the elements beyond a reasonable doubt. Huckleberry tendered the following instruction:

Evidence has been introduced tending to establish an alibi which amounts to a contention that John F. Huckleberry was not present at the time when or at the place where he is alleged to have committed the offense charged.

If after consideration of all the evidence in the case you have a reasonable doubt whether the defendant was present at the time and place the alleged offense was committed, you must acquit him. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

The trial court rejected this instruction, concluding that the defense of alibi is not an affirmative defense meriting a separate jury instruction, but rather reinforces a plea of not guilty by emphasizing that the defendant was not present when the offense occurred. The trial court then offered to give the jury an instruction stating, in pertinent part, as follows:

It is defendant's position that evidence was introduced showing he was not present at the time and place where the crime is alleged to have been committed.

The burden is upon the People to prove each and every element of the charge as explained at Instruction # ___ beyond a reasonable doubt.

Huckleberry rejected this proposed instruction on the ground that "it would create at least an impression of shifting the burden of proof [and] that we have the necessity of proving something here." The jury found Huckleberry guilty of both offenses.

Huckleberry filed an appeal with the Court of Appeals alleging, *inter alia*, that the trial court erred by failing to give his tendered instruction on the affirmative defense of alibi and by overruling his objections to the hearsay statements of the victim.[1] Relying on its earlier decisions in *People v. Rex*, 689 P.2d 669 (Colo.App.), *cert. denied* (1984), and *People v. Villa*, 43 Colo.App. 284, 605 P.2d 481 (1979), *cert. denied* (1980), the Court of Appeals held that the concept of alibi is an affirmative defense and that the trial court's failure to instruct the jury pursuant to section 18–1–407, 8B C.R.S. (1986)[2] and CJI–Crim.

---

1. Huckleberry raised three additional issues:

    1. Whether Mr. Huckleberry's conviction must be vacated because there was insufficient evidence to prove beyond a reasonable doubt that Mr. Huckleberry was guilty of first degree murder[.]

    2. Whether the trial court erred in denying Mr. Huckleberry's challenge for cause to a juror who repeatedly expressed doubt abut her ability to dismiss her preconceived opinions about the case, and her ability to confine her deliberations to the evidence presented at trial[.]

    3. Whether the trial court's refusal to allow individual voir dire on the jurors' exposure to pretrial publicity was an abuse of discretion because it prevented Mr. Huckleberry from determining whether the jurors could be fair and impartial[.]

The Court of Appeals rejected Huckleberry's arguments respecting these issues, and Huckleberry's cross-petition for certiorari challenging these rulings of the Court of Appeals was denied. It is also noted that the Office of the District Attorney for the Fourth Judicial District filed an amicus curiae petition for certiorari in this case but did not otherwise participate in these proceedings.

2. Section 18–1–407, 8B C.R.S. (1986), states as follows:

    **Affirmative defense.** (1) "Affirmative defense" means that unless the state's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, shall present some credible evidence on that issue.

    (2) If the issue involved in an affirmative defense is raised, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense.

7:01[3] that the People had the burden of refuting the alibi beyond a reasonable doubt constituted reversible error. The Court of Appeals also held that Somma's testimony repeating what Beverly had told her on November 28, 1983, constituted hearsay evidence and was not admissible. However, in light of the trial court's determination that the statements were necessary to assist the jury, the Court of Appeals observed that on retrial the statements might prove admissible under another provision of the Colorado Rules of Evidence. The Court of Appeals then reversed the judgment of the trial court and remanded the case for a new trial.

## II

The People argue that the Court of Appeals erroneously declared the defense of alibi to be an affirmative defense requiring a jury instruction pursuant to section 18–1–407, 8B C.R.S. (1986), and CJI–Crim. 7:01. We agree.

Whether a particular defense is an affirmative defense has significance for determining what jury instructions, if any, must be given concerning the burden of proof regarding the matter raised as a defense. A defendant who introduces some credible evidence of an affirmative defense is entitled to an instruction informing the jury that the prosecution "has the burden of proving the guilt of the defendant ... beyond a reasonable doubt as to the affirmative defense, as well as to all the elements of the crime charged." § 18–1–407, 8B C.R.S. (1986); CJI–Crim. 7:01; *People v. Ledman*, 622 P.2d 534, 538 (Colo.1981); *People v. Taggart*, 621 P.2d 1375, 1384 (Colo.1981). If no affirmative defense has been raised, the defendant is not entitled to this instruction.

The defense of alibi has been defined as "[a] defense that places the defen-

dant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Black's Law Dictionary* 66 (5th ed. 1979). *See Foster v. People*, 56 Colo. 452, 139 P. 10 (1914); *Wisdom v. People*, 11 Colo. 170, 17 P. 519 (1887). An alibi defense essentially denies that the defendant committed the act charged, while an affirmative defense basically admits the doing of the act charged but seeks to justify, excuse or mitigate it. *See Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), *overruled on other grounds, Meadows v. Holland*, 831 F.2d 493 (4th Cir.1987); *United States v. Parr*, 516 F.2d 458 (5th Cir.1975); *People v. Gallegos*, 628 P.2d 999 (Colo.1981). This distinction between an affirmative defense and a defense in the nature of a traverse was recognized by this court in the early decision of *McNamara v. People*, 24 Colo. 61, 48 P. 541 (1897). In *McNamara*, wherein we reversed a judgment of conviction of the offense of assault to rob because of the trial court's erroneous instruction concerning the alibi defense raised by the defendant, we reviewed conflicting authority on the issue and concluded that the defense of alibi is not an affirmative defense.

Most jurisdictions that have addressed this issue have concluded that the defense of alibi is not an affirmative defense. *See, e.g., Adkins v. Bordenkircher*, 674 F.2d at 279; *Robertson v. Warden*, 466 F.Supp. 262 (D.Md.1979), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980); *Doisher v. State*, 632 P.2d 242 (Alaska App. 1981); *Harkness v. State*, 267 Ark. 274, 590 S.W.2d 277 (1979); *Jackson v. State*, 374 A.2d 1 (Del.1977); *People v. Rivera*, 72 Ill.App.3d 1027, 28 Ill.Dec. 669, 390 N.E.2d 1259 (1979); *Williams v. State*, 99 Nev. 797, 671 P.2d 635 (1983) ("a complete and

---

**3.** CJI–Crim. 7:01 states as follows:

AFFIRMATIVE DEFENSES–GENERALLY

The evidence presented in this case has raised an affirmative defense.

The prosecution has the burden of proving the guilt of the defendant to your satisfaction beyond a reasonable doubt as to the affirma-

tive defense, as well as to all the elements of the crime charged.

After considering the evidence concerning the affirmative defense, with all the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty.

direct denial of the state's case"); *Christian v. State,* 555 S.W.2d 863 (Tenn.1977) (alibi is simply "a type of evidence offered in behalf of the accused"); *Miller v. State,* 660 S.W.2d 95 (Tex.Crim.App.1983); *State v. Romero,* 554 P.2d 216 (Utah 1976). A few courts, however, have characterized the defense of alibi as an affirmative defense. *See, e.g., Simmons v. Dalsheim,* 543 F.Supp. 729 (S.D.N.Y.1982); *State v. Alexander,* 161 W.Va. 776, 245 S.E.2d 633 (1978), *overruled on other grounds, State v. Kopa,* 311 S.E.2d 412 (W.Va.1983).

We believe the majority view to be the more persuasive analysis. As we noted in *McNamara,* the essence of an affirmative defense is the admission of the conduct giving rise to the charged offense. Having acknowledged presence at and participation in the event, the participant in effect justifies the conduct on grounds deemed by law to be sufficient to render the participant exempt from criminal responsibility for the consequences of the conduct. The People are required to negate an affirmative defense because such defense raises factors justifying the defendant's conduct to a parity with the elements of the offense. That is, even if the People establish each element of the offense beyond a reasonable doubt, the defendant cannot be found guilty unless the additional questions of fact raised by the pleading of the affirmative defense are disproved.

The defense of alibi does not require proof or disproof of factual issues beyond those necessary to establish the elements of the offense charged. It rather emphasizes the significance of particular issues of fact the People must establish in every criminal case—namely, that the defendant was present or, in some cases, represented at the scene of the event and that the defendant was personally responsible for the prohibited conduct. No special instructions are necessary to inform the jury of the People's burden to prove that a defendant alleged to have committed an offense did commit that offense.

The Colorado Court of Appeals has adopted the minority view. In *People v. Villa,* 43 Colo.App. 284, 605 P.2d 481 (1979), *cert. denied* (1980), the Court of Appeals assumed, without stating its reasons or making any reference to our decision in *McNamara,* that the defense of alibi is an affirmative defense and reversed the trial court's judgment of conviction for failure to instruct the jury that the prosecution had the burden of negating the alibi defense beyond a reasonable doubt. Relying on the *Villa* decision, the Court of Appeals again held in *People v. Rex,* 689 P.2d 669 (Colo.App.), *cert. denied* (1984), that alibi is an affirmative defense requiring an instruction to the jury describing the People's burden of refuting the defendant's affirmative defense beyond a reasonable doubt. These holdings are in conflict with our conclusion in *McNamara* that the defense of alibi is not an affirmative defense.

Huckleberry argues that the defense of alibi must be deemed to be included in the provisions of section 18–1–407, 8B C.R.S. (1986), which statute allocates the burdens of proof when an affirmative defense is raised by a defendant.[4] Although the General Assembly has expressly recognized several affirmative defenses,[5] the defense of alibi has not been established by statute. We reject Huckleberry's argument that the affirmative defense statute, section 18–1–407, 8B C.R.S. (1986), encompasses the defense of alibi even though such defense is not specified by any statute.

We reaffirm our conclusion in *McNamara* that the defense of alibi is not an affirmative defense. The trial court properly denied the special instruction tendered by Huckleberry and properly instructed the jury as to the People's burden of proving all the elements of the offenses charged. We also disavow the reasoning of the decisions of the Court of Appeals in *Villa* and *Rex.*

4. *See* n. 2.

5. *See, e.g.,* § 16–8–103.5, 8A C.R.S. (1986 & 1988 Supp.), and § 18–1–803, 8B C.R.S. (1986) (impaired mental condition); §§ 18–1–701 to –710,

8B C.R.S. (1986) (execution of public duty, choice of evils, uses of physical force and deadly physical force, duress and entrapment); § 18–1–805, 8B C.R.S. (1986) (responsibility).

### III

The People also assert that the Court of Appeals erred in concluding that Beverly's statements, as testified to by Somma, constitute inadmissible hearsay. We again agree.

### A

The disputed testimony was elicited by the People to inform the jury about a critical conversation between Somma and Huckleberry that occurred in the afternoon on November 29, 1983. Somma testified that during the early evening of November 28 she and Beverly met at a local hospital where Somma's daughter was receiving medical treatment; that when Beverly arrived later than scheduled, she explained her tardiness by commenting that her husband "had had a flat tire in her car on Lexington"; and that Beverly also mentioned that Huckleberry "had walked back to the [motel] from where the flat tire was and he had gotten her a truck from the dealership." Somma testified that Huckleberry responded to these comments by insisting that Beverly was driving her own car on November 28, by repeatedly warning Somma not to tell the police anything about the truck or they would "hang him for sure," and by telling Somma to say that Beverly had been driving the truck on November 27 rather than November 28.

Huckleberry raised objections on several occasions to testimony by Somma describing Beverly's statements about the car and the truck. Prior to trial, in response to Huckleberry's motion in limine arguing that any testimony by Somma describing what Beverly told her would constitute inadmissible hearsay, the trial court issued a detailed order which states in part as follows:

> Review of the testimony of that witness before the Grand Jury and at trial and at preliminary hearing show the material statements would fall into three categories. One, the decedent's intent to go certain places or to do certain things in the future. Two, the current location or state of objects or persons and, three, psychological attitudes toward persons or objects.
>
> The law is clear that statements of a decedent as to intent to perform future acts is [sic] admissible if supported by circumstances showing the reliability of the statement. In this case there is no evidence whatsoever to support an inference that the decedent made the statements to deceive or accomplish some end other than to express her intention to act. These statements are admissible and the Motion in Limine as to testimony describing them is denied.
>
> Statements as to the current location or state of objects or persons are not admissible, except when the purpose of the statement is to prove the state of mind of the decedent. The Motion in Limine is granted to this category of statement except as to the state of mind exception.
>
> Statements reflecting psychological attitudes towards persons or objects. The primary statement the People wish to present is decedent's attitude toward driving a truck. That attitude has no relevance to any issue to be decided by the Finder of Fact and would be utilized by the district attorney to raise an inference that the victim was driving a truck. That would not be a permissible inference to be drawn from the statement. The potential prejudice to the Defendant would substantially outweigh any benefit to the fact finding function of the jury. Therefore, the Motion in Limine as to that statement is sustained.

At trial, Huckleberry again challenged portions of Somma's testimony on hearsay grounds. He initially objected to a question asking Somma to inform the jury what Beverly said to her at the hospital on November 28 in explanation of her late arrival. The jury was directed to leave, and Somma then testified as an offer of proof that Beverly said she was late because "her husband wasn't back yet with the car." The trial court sustained this objection, ruling that this statement constituted hearsay and was inadmissible because it was not offered to establish Beverly's state of mind.

At a later point during Somma's testimony on behalf of the prosecution, after having testified that Huckleberry said Beverly had been driving the car the night of November 28, Somma began to recount her November 29 discussion with Huckleberry and to describe Huckleberry's repeated requests that she not reveal her understanding that Beverly was driving a truck on the evening of November 28. Huckleberry objected on two separate occasions to Somma's descriptions of what Beverly had told her about her car and the truck. The trial court overruled both objections and instructed the jury on each occasion that the evidence was not admitted for the truth of its contents, but only for the limited purpose of understanding Somma's conversation with Huckleberry.

Finally, at the conclusion of Somma's direct testimony, Huckleberry requested the trial court to strike all references to Beverly's statements and to declare a mistrial. The trial court denied the motions, concluding that the questions were appropriate and explaining its ruling as follows:

> The standards the Court must apply is [sic] to consider possible prejudice to both sides and the assistance to the finder of fact in reaching the verdict they must reach. Obviously, if these statements could not be made, the conversation, so far as the finder of fact would be concerned, would be absolute nonsense.

It could make no response to it and no valuation of it.

The Court of Appeals concluded that Beverly's statements, as reported by Somma at trial, constituted hearsay evidence and were not admissible under the state of mind exception to hearsay evidence embodied in CRE 803(3). Observing that the trial court had found the statements necessary to assist the jury, the Court of Appeals left open the question of their admissibility on retrial under the provisions of newly adopted CRE 804(b)(5).[6]

Hearsay is defined as a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. CRE 801(c). Hearsay is inadmissible unless it falls within one of the exceptions listed in CRE 803 or 804. *People v. Mann*, 646 P.2d 352 (Colo.1982); CRE 802.

The People argued before the Court of Appeals that Beverly's statements were admissible under CRE 803(3) as a state of mind exception to the prohibition against hearsay.[7] The Court of Appeals pointed out that the statements were not offered to prove Beverly's state of mind on November 28. Therefore, as the Court of Appeals held, they were not admissible under the provisions of CRE 803(3) permitting the

---

6. This rule, which became effective on April 1, 1985, subsequent to the conclusion of Huckleberry's trial, states as follows:

   **(b) Hearsay exceptions.**

   **(5) Other Exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

   CRE 804(b)(5).

7. The People also contended there, as here, that a victim's statements are admissible under the "rule of completeness," citing *Callis v. People*, 692 P.2d 1045 (Colo.1984), and *McRae v. People*, 131 Colo. 305, 281 P.2d 153 (1955), *overruled by Callis v. People*, 692 P.2d 1045 (Colo.1984), in support of this argument. In *McRae*, we merely held that when a defendant in the course of conversations with law enforcement officers uttered admissions against interest, the officers were entitled to relate the entire content of the defendant's statements to the jury. In *Callis*, we specifically overruled *McRae* and rejected the "rule of completeness" articulated therein. In each case the disputed statements were uttered by the defendant and related past criminal conduct by the defendant. Neither case controls the question of the admissibility of Beverly's statements to Somma.

introduction of out-of-court statements to establish the declarant's state of mind.

However, the trial court ultimately classified those portions of Somma's testimony that are here challenged as non-hearsay evidence. It concluded that the evidence was not being offered for the "truth of the matter asserted," but rather to provide background necessary for a full understanding of the November 29 conversation between Somma and Huckleberry. Without Beverly's statements about the truck, the jury had no context within which to understand Somma's rejection of Huckleberry's version of the incident and Huckleberry's repeated requests to Somma not to tell the police about the truck. The trial court also held that the probative value of the evidence far outweighed its prejudice to Huckleberry.

■ Properly analyzed, the statements of Beverly do not constitute hearsay. They did constitute evidence relevant to specific factual issues surrounding Huckleberry's efforts to persuade Somma to say that Beverly had driven the truck on November 27, not November 28, and to prevent her from reporting her disagreement with the theory that Beverly was operating her car before she was killed. Furthermore, at the time the People offered this evidence, Somma had already informed the jury that Huckleberry had disputed Somma's understanding that Beverly had been driving the truck on November 28. When viewed from this perspective, whether Beverly's comments were true or false is immaterial. They were not admitted for the purpose of establishing their veracity, and the trial court so instructed the jury. They were thus admissible as relevant non-hearsay evidence, and the trial court did not err in so concluding.

### B

Huckleberry contends that even if Beverly's statements are admissible, their prejudicial effect outweighs their probative value. He relies on CRE 403 for this argument, which rule provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Evidence which "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case," is unfairly prejudicial. 1 J. Weinstein & M. Berger, *Weinstein's Evidence* § 403[03], at 403–15 to –17 (1978). In this case, the trial court expressly found that the probative value of Beverly's statements to Somma far outweighed their prejudicial effect on Huckleberry.

Trial courts are necessarily accorded considerable discretion in deciding questions concerning the admissibility of evidence. *Deas v. Cronin,* 190 Colo. 177, 544 P.2d 991 (1976); *Dressel v. Bianco,* 168 Colo. 517, 452 P.2d 756 (1969). Trial courts also have broad discretion to determine the relevancy of evidence, its probative value and its prejudicial impact. *Williamsen v. People,* 735 P.2d 176 (Colo.1987); *People v. Lowe,* 660 P.2d 1261 (Colo.1983). *See United States v. Marler,* 756 F.2d 206 (1st Cir.1985).

In assessing whether the probative value of evidence outweighs the prejudicial effect of otherwise admissible evidence, courts have recognized several factors which, depending on the context, merit consideration in whole or in part. These factors include the strength of the probative value of the challenged evidence, whether the challenged evidence represents a large proportion of the entire evidence in the case, the absence of other evidence on the issue raised by the challenged evidence and whether a limiting instruction will in fact prevent the jury from considering the evidence for the truth of its contents. *United States v. Cintolo,* 818 F.2d 980 (1st Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *United States v. Mazza,* 792 F.2d 1210 (1st Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987).

■ In this case, the trial court considered some of those factors. It pointed out that the probative value of the evidence was great. Although the trial court did not consider what proportion of the entire

evidence Somma's testimony represented, it implicitly recognized that no other evidence was available to explain the November 29 conversation between Huckleberry and Somma. Without that evidence, the significance of Huckleberry's statements to Somma urging her to change her understanding of what occurred on November 28 would be seriously undermined, and the jury would have no basis to judge Somma's credibility. The trial court gave an appropriate limiting instruction advising the jury that the statements were not to be considered for the truth of their content. Debate continues concerning the utility of such an instruction. *See United States v. Rodriguez,* 524 F.2d 485 (5th Cir.1975), *cert. denied,* 424 U.S. 972, 96 S.Ct. 1474, 47 L.Ed.2d 741 (1976); *United States v. Kaplan,* 510 F.2d 606 (2d Cir.1974); *cf. People v. Madson,* 638 P.2d 18, 30 (Colo.1981) ("We cannot ignore the practical and human limitations of the jury system.... For the jurors in this case to consider the assertions as true only as they related to the victim's state of mind and not true for any other purpose is a feat beyond their 'ability and almost certainly beyond their willingness.' ") (quoting C. McCormick, *Evidence* § 294 at 696 (1972)). However, the record contains no basis to suggest that the jury ignored the instruction. Having decided that the evidence was both significant to the People's case and prejudicial to the defendant, the trial court would have been remiss had it not explained the limited basis for which the evidence was admitted.

Our rules of evidence must be construed to ensure that truth may be ascertained and proceedings justly determined. CRE 102. In light of all the circumstances of this case, we conclude that the trial court did not abuse its discretion in determining that the probative value of Somma's testimony concerning Beverly's statements of November 28 outweighed the prejudicial effect such evidence had on Huckleberry. *See People v. Lowe,* 660 P.2d 1261 (Colo. 1983). We therefore reverse the Court of Appeals determination that the admission of this evidence constituted error.

The judgment of the Court of Appeals is reversed and the case is remanded to that court with directions to reinstate the trial court's judgment of conviction.