1
 2025 CO 41 The People of the State of Colorado, Petitioner v. Kenneth Alfonso Gallegos, Respondent No. 23SC605
Supreme Court of Colorado, En Banc
June 23, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA976

 Attorneys for Petitioner:

 Philip
 J. Weiser, Attorney General Brenna A. Brackett, Assistant
 Attorney General Denver, Colorado

 Attorneys for Respondent:

 Springer and Steinberg, P.C. Michael P. Zwiebel Harvey A.
 Steinberg Denver, Colorado

 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE
 GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined.

 OPINION

 BOATRIGHT, JUSTICE

 ¶1
Kenneth Alfonso Gallegos and three friends set out to obtain
 vaping products from a high school classmate, L.C. During the
 encounter, a struggle ensued, and one of Gallegos's
 friends fatally shot L.C. The People charged Gallegos with
 felony murder, with predicate felonies of aggravated robbery,
 attempted robbery, and conspiracy to commit aggravated
 robbery, along with other charges not relevant here. At
 trial, Gallegos denied the charges; his theory of defense was
 that he had not planned to rob L.C. and was unaware a gun was
 present until it was too late to prevent the shooting.
Gallegos also requested a jury instruction on the affirmative
 defense to felony murder, section 18-3-102(2), C.R.S. (2018).
The trial court denied the proposed instruction, deeming the
 affirmative defense incompatible with Gallegos's theory
 of defense, which the court characterized as an
 "outright denial" of any involvement in the
 underlying crime.

 ¶2
 After a jury found Gallegos guilty, he appealed, and a
 division of the court of appeals reversed his felony murder
 conviction. People v. Gallegos, 2023 COA 47, ¶
 6, 535 P.3d 108, 113. The division held that defendants may
 both deny the predicate felony and raise the affirmative
 defense to felony murder, and that therefore the trial court
 erred by failing to give Gallegos's requested
 instruction. Id. at ¶¶ 41-46, 57, 535 P.3d
 at 118-19, 121.

 ¶3
We granted the People's petition for certiorari review
 and now hold that a defendant need not admit the predicate
 felony to raise the affirmative defense to felony
 murder.[1] Accordingly, we affirm the judgment of the
 court of appeals.

 I.
Facts and Procedural History

 ¶4
 Gallegos, along with Dominic Stager and Demarea Mitchell,
 picked up Juliana Serrano from work. Gallegos drove the group
 to meet with an acquaintance, L.C., purportedly to purchase
 vaping products. At least some members of the group, however,
 had decided that they would take the products without paying.
When the group arrived, L.C. approached the vehicle but
 refused to produce the vaping materials before he was paid.
Gallegos, Stager, and Mitchell began searching the car,
 supposedly for a lost wallet. During this search, Mitchell
 took a gun Stager had brought, exited the vehicle, and
 confronted L.C. The two began grappling over the weapon and
 both fell to the ground. During the scuffle, Mitchell shot
 L.C., who ran into the house screaming. The group quickly
 returned to the vehicle, and Gallegos drove them away. L.C.
 later died from the gunshot wound.

 ¶5
 At trial, there was conflicting testimony regarding
 Gallegos's role in these events. Stager testified that
 the robbery was Gallegos's idea and that Gallegos had
 told him they "just needed a gun." Yet Stager also
 testified that others possessed the gun on the day of the
 attempted robbery, not Gallegos, and that when Gallegos saw
 the fight over it, he immediately moved to intervene,
 encouraging Serrano and Stager to help him stop the
 altercation. Mostly contradicting Stager, Serrano testified
 that "[t]here wasn't really a plan," and she
 didn't remember if Gallegos was involved in any
 discussion of the robbery on the way to L.C.'s home. She
 also could not remember whether Gallegos had discussed or had
 seen the gun before the scuffle, or whether he had moved to
 stop the fight.

 ¶6
 Gallegos's theory of defense was that he should be
 acquitted of all counts because he did not shoot L.C., plan
 the robbery, or even know that the gun was present. Gallegos
 also sought to assert the affirmative defense to felony
 murder. In doing so, Gallegos requested a jury instruction
 tracking the language of section 18-3-102(2), which provides
 defendants with an affirmative defense to felony murder if
 they meet certain conditions.[2]

 ¶7
The trial court declined to issue the instruction, concluding
 that the affirmative defense to felony murder was
 "diametrically opposed" to Gallegos's theory of
 defense, which the court described as an "outright
 denial of everything." Moreover, the court stated that
 it could not "find even a scintilla of evidence"
 supporting one of the affirmative defense's
 conditions-that Gallegos "had no reasonable ground to
 believe that no other participant was armed with a gun."
See § 18-3-102(2)(d). The jury found Gallegos
 guilty of felony murder and other charges.[3]

 ¶8
 On appeal, a division of the court of appeals held that
 Gallegos's theory of defense did not preclude him from
 raising the affirmative defense to felony murder.
Gallegos, ¶¶ 41-46, 535 P.3d at 118-19.
The division noted that neither this court nor the
 legislature has imposed a "categorical requirement that
 the defendant admit to the underlying charged offense"
 to raise an affirmative defense. Id. at ¶ 35,
 535 P.3d at 117. The division distinguished this case from
 other court of appeals cases holding that defendants who
 denied committing the charged offense could not
 raise an affirmative defense, reasoning that, unlike the
 defenses in those cases, the felony murder defense was not
 "inextricably intertwined with the elements of the
 [predicate] offense." Id. at ¶¶
 28-38, 535 P.3d

 at 116-18. Consequently, the division overturned
 Gallegos's felony murder conviction, affirmed his lesser
 convictions, and ordered a new felony murder trial.
Id. at ¶ 57, 535 P.3d at 121.

 ¶9
We granted the People's petition for certiorari.

 II.
Analysis

 ¶10
We begin by introducing the relevant legal framework, which
 includes the applicable standard of review and principles of
 statutory interpretation, the differences between traverses
 and affirmative defenses, and the felony murder statute. We
 then evaluate whether defendants must admit to the predicate
 felony to raise the affirmative defense to felony murder and
 conclude that no such admission is required. Hence, we affirm
 the court of appeals.

 A.
Legal Framework

 1.
Standard of Review and Principles of Statutory
 Interpretation

 ¶11
 Interpretation of a statute defining an affirmative defense,
 including evaluation of the defense's elements or
 conditions, is a question of law that we review de novo.
People v. Speer, 255 P.3d 1115, 1119 (Colo. 2011);
see also People v. Garcia, 113 P.3d 775, 780 (Colo.
2005). Our objective is to ascertain and give effect to the
 legislative intent underlying the statute. People v.
 Laeke, 2012 CO 13M, ¶ 11, 271 P.3d 1111, 1114.
"To ascertain legislative intent, we first look to the
 statutory language." Id. When the plain
 language is unambiguous and the legislature's

 intent is reasonably certain, our inquiry ends. Jefferson
 Cnty. Bd. of Equalization v. Gerganoff, 241 P.3d 932,
 935 (Colo. 2010).

 2.
Traverses and Affirmative Defenses

 ¶12
 There are two primary defenses to criminal charges: traverses
 and affirmative defenses. Roberts v. People, 2017 CO
 76, ¶ 19, 399 P.3d 702, 705. A traverse defense seeks to
 "refute[] the possibility that the defendant committed
 the charged offense by negating one or more elements of that
 offense." Id. at ¶ 21, 399 P.3d at 705.

 ¶13
 In contrast, "[a]n affirmative defense essentially
 admits the defendant's commission of the elements of the
 charged act but seeks to justify, excuse, or mitigate the
 commission of the act." Id. at ¶ 20, 399
 P.3d at 705. In other words, by asserting an affirmative
 defense, the defendant attempts to "justif[y] the
 conduct on grounds deemed by law to be sufficient to render
 the participant exempt from criminal responsibility for the
 consequences of the conduct." People v.
 Huckleberry, 768 P.2d 1235, 1239 (Colo. 1989).

 ¶14
 Affirmative defenses are premised on "conditions"
 analogous to a crime's elements. To raise such a defense,
 defendants must point to "some credible evidence"
 to support each of its conditions. § 18-1-407(1), C.R.S.
 (2024); see also Speer, 255 P.3d at 1119. This is a
 low bar: We have previously explained that "some
 credible evidence" includes "'any credible
 evidence . . . even highly improbable'

 evidence," and is synonymous with "a scintilla of
 evidence." Galvan v. People, 2020 CO 82, ¶
 24, 476 P.3d 746, 754 (first quoting § 18-1-407(1); then
 quoting Speer, 255 P.3d at 1119; and then quoting
 People v. Saavedra-Rodriguez, 971 P.2d 223, 228
(Colo. 1998)). Moreover, such evidence need not have been
 initially presented by the defendant. See §
 18-1-407(1). It may also conflict with other evidence relied
 on, or arguments made, by the defendant. See Mathews v.
 United States, 485 U.S. 58, 66 (1988) (declining to
 "make the availability of an [affirmative defense]
 instruction . . . subject to a requirement of consistency to
 which no other such defense is subject").

 ¶15
 Once properly raised, an affirmative defense effectively adds
 a new element to the prosecution's burden regarding the
 charged offense. Martinez v. People, 2024 CO 48,
 ¶ 12, 550 P.3d 713, 716. In that instance, the
 prosecution must then both prove the original elements of the
 charged offense and disprove the validity of the affirmative
 defense beyond a reasonable doubt. People v.
 Pickering, 276 P.3d 553, 555 (Colo. 2011); see
 also § 18-1-407(2). Prosecutors can overcome an
 affirmative defense by disproving at least one of its
 conditions beyond a reasonable doubt. See
Huckleberry, 768 P.2d at 1239 ("[E]ven if the
 People establish each element of the offense beyond a
 reasonable doubt, the defendant cannot be found guilty unless
 the additional questions of fact raised by the pleading of
 the affirmative defense are disproved."); see
 also § 18-1-407(2).

 3.
The Affirmative Defense to Felony Murder

 ¶16
 Felony murder is a unique crime because it requires the
 defendant's commission of another, underlying felony,
 which results in the death of a nonparticipant in the
 criminal conduct.[4] Under section 18-3-102(1)(b), a defendant
 commits felony murder if (1) the defendant commits or
 attempts to commit an enumerated offense (the
 "predicate" felony), and (2) "in the course of
 or in furtherance of" that predicate felony, the death
 of someone other than one of the participants in the offense
 "is caused by anyone."[5] Felony murder is a strict
 liability crime; there is no requirement that the defendant
 intended the victim's death. People v. Fisher, 9
 P.3d 1189, 1191 (Colo.App. 2000); § 18-3-102(1)(b).

 ¶17
 The General Assembly first established the crime of felony
 murder in 1971. Comments included with the original statute
 expressed the drafters' desire to provide nonkiller
 defendants with a means to avoid felony murder liability in
 instances where its imposition would be unduly harsh:

[T]he felony murder doctrine, in its rigid automatic
 envelopment of all participants in the underlying felony, may
 be unduly harsh in particular instances; . . . cases do
 arise, rare as they may be, where it would be just and
 desirable to allow a nonkiller defendant of relatively minor
 culpability a chance of extricating himself from

 liability for murder-though not, of course, from liability
 for the underlying felony.

§ 40-3-102 cmt., 8 C.R.S. (1963 &Supp. 1971). To
 address this concern, the legislature included an affirmative
 defense specifically for felony murder. See id.;
§ 18-3-102(2).

 ¶18
 The affirmative defense effective at the time of
 Gallegos's case featured six conditions, requiring that
 the defendant:

(a) Was not the only participant in the underlying crime; and

(b) Did not commit the homicidal act or in any way solicit,
 request, command, importune, cause, or aid the commission
 thereof; and

(c) Was not armed with a deadly weapon; and

(d) Had no reasonable ground to believe that any other
 participant was armed with such a weapon, instrument,
 article, or substance; and

(e) Did not engage himself in or intend to engage in and had
 no reasonable ground to believe that any other participant
 intended to engage in conduct likely to result in death or
 serious bodily injury; and

(f) Endeavored to disengage himself from the commission of
 the underlying crime or flight therefrom immediately upon
 having reasonable grounds to believe that another participant
 is armed with a deadly weapon, instrument, article, or
 substance, or intended to engage in conduct likely to result
 in death or serious bodily injury.

§ 18-3-102(2).[6]

 ¶19
 The question presented by this case is whether a defendant
 must admit to the predicate felony to raise the affirmative
 defense to felony murder. With the foregoing legal framework
 in mind, we now consider this question.

 B.
Defendants Need Not Admit the Predicate Felony to Raise the
 Affirmative Defense to Felony Murder

 ¶20
The People maintain that the plain language of the
 affirmative defense to felony murder "presupposes a
 defendant committed a qualifying felony" and is
 therefore "incompatible with [a] denial of participation
 in the underlying felony." In support of this position,
 they note that four of the affirmative defense's six
 conditions reference the defendant being among a group of
 "participants" in the predicate offense. §
 18-3-102(2). The People also highlight the sixth
 condition's requirement that the defendant attempt to
 "disengage," § 18-3-102(2)(e), arguing that
 defendants can't disengage unless they have
 engaged in the commission of the predicate felony in
 the first place.

 ¶21
 To bolster their plain language arguments, the People assert
 that allowing defendants to both deny the commission of the
 underlying felony and raise the affirmative defense is
 contrary to the premises underlying affirmative defenses
 generally. In doing so, they rely on a line of Colorado cases
 explaining that, by asserting an affirmative defense, a
 defendant essentially admits his presence at and
 participation in the charged conduct, but nonetheless seeks
 to justify, excuse, or mitigate his liability. See,
 e.g., Huckleberry, 768 P.2d at 1238 ("[A]n
 affirmative

 defense basically admits the doing of the act charged but
 seeks to justify, excuse or mitigate it."); see also
Pearson v. People, 2022 CO 4, ¶ 18, 502 P.3d 1003,
 1007 ("[A] defendant essentially acknowledges
 'presence at and participation in the event' but
 claims that they were legally justified in doing so
 ...." (quoting Huckleberry, 768 P.2d at 1239)).
The People also point to People v. Hendrickson, 45
 P.3d 786, 792 (Colo.App. 2001), which held that defendants
 must admit to the underlying crime to raise the affirmative
 defense of entrapment, to argue that affirmative defenses
 generally presuppose that the defendant committed
 the relevant crime.

 ¶22
 To assess these arguments, we now look to the felony murder
 statute and evaluate each of the affirmative defense's
 conditions in turn.[7]

 1.
The Plain Language of the Affirmative Defense to Felony
 Murder Includes No Admission Requirement

 ¶23
 The felony murder defense's first condition requires that
 the defendant "[w]as not the only participant in the
 underlying crime." § 18-3-102(2)(a). Hence, this
 condition requires some credible evidence that the defendant,
 along with others, participated in the predicate
 felony. Id.; § 18-1-407(1). But
 participation in criminal conduct does not equate to
 commission of an offense. Commission denotes

 a completed crime, entailing a concurrence of both an
 unlawful act (actus reus) and a culpable mental state (mens
 rea). See Morissette v. United States, 342 U.S. 246,
 251-52 (1952). Participation falls short of requiring that
 the criminal act be completed and indicates nothing regarding
 a culpable mental state. Thus, pointing to some evidence of
 participation in the underlying crime does not
 presuppose its commission and is not inconsistent
 with a defendant's denial of the predicate
 offense.[8]

 ¶24
 Turning to the second through fifth conditions, they are
 essentially denials of the defendant's acts or
 knowledge. Indeed, the second condition is supported by
 evidence that the defendant did "not commit the
 homicidal act or in any way solicit, request, command,
 importune, cause, or aid the commission thereof," while
 the third condition requires evidence that the defendant was
 "not armed with a deadly weapon." §
 18-3-102(2)(b)-(c) (emphases added); see also §
 18-1-407(1). To support the fourth condition, a
 defendant must point to evidence that they had
 "no reasonable ground to believe that any other
 participant was armed" with a deadly weapon. §
 18-3-102(2)(d) (emphasis added); see also §
 18-1-407(1). Likewise, for the fifth condition, a defendant
 must offer evidence

 indicating that they did not "engage in"
 conduct creating a substantial risk of death or serious
 bodily injury, did not plan to do so, and had
 "no reasonable ground to believe that any other
 participant intended to engage in [such] conduct."
§ 18-3-102(2)(e) (emphasis added); see also
§ 18-1-407(1). As denials, we perceive nothing in the
 second through fifth conditions requiring a defendant to
 admit the underlying felony. § 18-3-102(2)(b)-(e).

 ¶25
 Lastly, the sixth condition is supported by evidence that the
 defendant attempted to "disengage himself from the
 commission of the underlying crime . . . immediately upon
 having reasonable grounds to believe that another participant
 [was] armed with a deadly weapon . . . or intended to engage
 in conduct likely to result in death or serious bodily
 injury." § 18-3-102(2)(f). As with
 "participation," the word "disengage"
 implies that the defendant was, to at least some degree,
 engaged in the first place. However, for the same reasons
 applicable to participation, pointing to evidence of
 disengagement from the underlying criminal conduct
 does not require a defendant to admit commission of
 the predicate felony.

 ¶26
We therefore perceive nothing in the plain language of the
 affirmative defense to felony murder that requires the
 defendant to admit the commission of the underlying felony.
§ 18-3-102(2).

 ¶27
 Moreover, as explained above, a defendant may present
 evidence supporting an affirmative defense that is
 inconsistent with the defendant's other arguments or with
 the evidence relied on to make those arguments. See
Mathews, 485 U.S. at 66. Indeed, arguing an affirmative
 defense in the alternative is a long-accepted practice.
See, e.g., Stevenson v. United States, 162
 U.S. 313, 322-23 (1896) (concluding that the defendant was
 entitled to both a manslaughter instruction based on heat of
 passion and the arguably inconsistent affirmative defense of
 self-defense; explaining, "[I]f there be any evidence
 fairly tending to bear upon the issue of manslaughter, it is
 the province of the jury to determine from all the evidence
 what the condition of mind was, and to say whether the crime
 was murder or manslaughter."). Assuming sufficient
 evidence supports the affirmative defense to felony murder,
 it is the province of the jury to weigh the credibility of
 any conflicting evidence and decide both (1) whether the
 defendant committed the underlying crime and, if so, (2)
 whether the affirmative defense shields the defendant from
 felony murder liability.[9] Whether to present

 inconsistent theories of defense, including the felony murder
 affirmative defense, is a trial strategy decision within
 defense counsel's discretion.

 ¶28
 Indeed, the facts of this case illustrate how a defendant may
 satisfy the conditions required to properly raise the felony
 murder affirmative defense without admitting to the
 commission of the predicate felony.

 ¶29
We begin with the first condition: participation. Here, the
 evidence showed that Gallegos drove the group to and from the
 scene of the shooting. Gallegos did not deny his involvement
 in this regard, and this evidence was sufficient to support
 the first condition, along with the participation aspects of
 the fourth through sixth conditions. See §
 18-3-102(2)(a), (d)-(f).

 ¶30
 Next, it is undisputed that Mitchell, not Gallegos, shot
 L.C., which was sufficient to support the second condition.
See § 18-3-102(2)(b) (requiring that the
 defendant was not the killer and did not assist in or plan
 the killing).

 ¶31
 Moving to the third condition, Stager and Serrano's
 testimony indicated that the gun was never in Gallegos's
 possession. The third condition was therefore also supported.
See § 18-3-102(2)(c) (requiring that the
 defendant was unarmed).

 ¶32
 As to the fourth condition-whether the defendant had
 reasonable grounds to believe others were armed-Serrano
 testified that "[t]here wasn't really a plan,"
 and she didn't remember if Gallegos was involved in any
 discussion of the robbery or knew of the gun before the
 altercation. True, evidence conflicted on this point,

 with Stager testifying that Gallegos had told him they
"just needed a gun." However, as with any
 affirmative defense, the felony murder defense's fourth
 condition requires only a scintilla of evidence in
 support-even highly improbable evidence will suffice. See
 Galvan, ¶ 24, 476 P.3d at 754. Hence, sufficient
 evidence supported the fourth condition. See §
 18-3-102(2)(d); § 18-1-407(1).

 ¶33
 Under the fifth condition, the defendant must not take part
 in conduct that created a substantial risk of death and must
 have lacked reason to expect others would engage in such
 conduct. § 18-3-102(2)(e). Serrano's testimony that
 she didn't remember if Gallegos was present during any
 discussion of the robbery plans, and didn't know whether
 he was aware of the gun, was sufficient to support this
 condition. See id.

 ¶34
 Finally, regarding disengagement, Stager testified that
 Gallegos moved to intervene in the scuffle over the gun and
 encouraged Stager and Serrano to help stop the altercation.
This evidence of an immediate attempt to disengage was
 sufficient to support the sixth condition. See
§ 18-3-102(2)(f). Hence, sufficient evidence existed for
 Gallegos to put the felony murder defense before the jury,
 despite his denial of the predicate felonies. See
§ 18-3-102(2); § 18-1-407(1).

 2.
Previous Colorado Affirmative Defense Cases Do Not Resolve
 the Issue Before Us

 ¶35
The People nevertheless rely on cases like
 Huckleberry and Pearson for the proposition
 that "[i]n asserting an affirmative defense, a defendant
 admits to the

 conduct that gives rise to the charged offense."
Pearson, ¶ 18, 502 P.3d at 1007 (citing
Huckleberry, 768 P.2d at 1238). But these cases do
 not resolve the question before us.

 ¶36
 In cases like Huckleberry and Pearson, we
 wrote in broad terms about the theory animating affirmative
 defenses generally, often to explain a related
 concept. See Huckleberry, 768 P.2d at 1238-39
(explaining how an alibi defense differs from an affirmative
 defense; holding that an alibi defense is not an affirmative
 defense); see also Pearson, ¶¶ 18, 33, 502
 P.3d at 1007, 1010 (explaining the difference between
 traverse and affirmative defenses; holding that defendants
 may raise the affirmative defense of self-defense against
 harassment charges). Such generalities may well apply to
 some affirmative defenses.

 ¶37
 For example, Hendrickson, which cites
 Huckleberry, considered the entrapment defense.
Hendrickson, 45 P.3d at 790-93. The entrapment
 statute provides: "The commission of acts which
 would otherwise constitute an offense is not criminal if the
 defendant engaged in the proscribed conduct because he was
 induced to do so by a law enforcement official ...."
§ 18-1-709, C.R.S. (2024) (emphasis added). Hence, the
 plain language of the entrapment defense explicitly
 contemplates that the defendant committed the
 underlying crime. Id. Consequently, the
 "admission" theory explained in cases like
 Huckleberry fits with the language of the entrapment
 statute.

 ¶38
 But the felony murder affirmative defense includes nothing
 analogous to the entrapment statute's reference to
 "commission of acts which would otherwise
 constitute an offense." Compare § 18-1-709
(emphasis added), with § 18-3-102(2). Although
 the felony murder statute requires that the defendant was
 "not the only participant" and attempted to
 "disengage" for its affirmative defense to apply,
 § 18-3-102(2)(a), (f), neither participation nor
 disengagement equate to the commission of the charged
 offense, as discussed above. Hence, unlike the entrapment
 defense, the affirmative defense to felony murder is not
 "inextricably intertwined" with the commission of
 the underlying offense. See Gallegos, ¶¶
 30, 38, 535 P.3d at 117-18. Thus, the "admission"
 theory animating affirmative defenses generally doesn't
 address the specific statutory language of the felony murder
 defense-and is therefore not determinative of the question
 before us.[10]

 ¶39
 In sum, we agree with the division that the felony murder
 defense is "consistent with a defendant's denial
 that he engaged in criminal conduct," id. at
 ¶ 40, 535 P.3d at 118, and hold that defendants need not
 admit the predicate felony to raise the affirmative defense
 to felony murder.

 III.
Conclusion

 ¶40
 For the foregoing reasons, we affirm the judgment of the
 court of appeals.

---------

[1] We granted certiorari to review the
 following issue:

Whether the division erred in concluding that a
 defendant need not be compelled to admit the predicate felony
 to raise the statutory felony murder affirmative defense when
 the evidence conflicted as to whether the defendant was
 involved in the predicate felony.

[2] In 2021, the legislature reclassified
 felony murder from first to second degree murder. Ch. 58,
 sec. 1-2, §§ 18-3-102 to -103, 2021 Colo. Sess.
 Laws 235, 235-36; § 18-3-103(1)(b), C.R.S. (2024).
Because the 2018 statute was in effect at the time of the
 events in this case, that version applies to Gallegos's
 felony murder charge.

[3] Gallegos was also convicted of
 attempted aggravated robbery, conspiracy to commit aggravated
 robbery, and attempted theft.

[4] Here, the underlying felony charges
 were aggravated robbery, attempted aggravated robbery, and
 conspiracy to commit aggravated robbery.

[5] The 2021 update narrowed this
 requirement, limiting criminal liability to a death
 "caused by any participant." 2021 Colo. Sess. Laws
at 235-36.

[6] In the 2021 update, the legislature
 removed conditions (d) and (f) from the affirmative defense.
2021 Colo. Sess. Laws at 235-36.

[7] In the People's reply brief, they
 argue, for the first time, that any error in the trial
 court's refusal to issue Gallegos's requested
 instruction was harmless. Because we need not review
 arguments raised for the first time in a reply brief, we
 decline to do so here. See Davis v. Pursel, 134 P.
 107, 112 (1913).

[8] This reasoning applies with equal
 force to the "participation" aspects of the felony
 murder affirmative defense's fourth through sixth
 conditions. See § 18-3-102(2)(d)-(f).

[9] Even though the crime of felony murder
 necessarily involves committing a predicate felony, its
 affirmative defense is just that-a defense to felony
 murder, which is separate from the predicate felony.
That is, prevailing on the affirmative defense to felony
 murder doesn't excuse commission of the predicate offense
 or alter any potential liability for that offense.

[10] Because this case is specific to the
 felony murder defense, we decline to address whether a
 defendant may raise other affirmative defenses while also
 denying committing the underlying crime.

---------